LINCOLN V. HORTON (SBN 165238)
HORTON VILLAGE LAW GROUP, APC
lhorton@hortonvillagelaw.com
16236 San Dieguito Road, Suite 5-24
P.O. Box 9181
Rancho Santa Fe, CA 92067
Telephone: 858.832.8685

Attorneys for Plaintiffs MENDOCINO GROUP, INC.;
JOSEPH D. DAVIS AND TERRI L. DAVIS AS TRUSTEES
FOR MENDOCINO GROUP, INC. PENSION PLAN

UNITED STATE DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MENDOCINO GROUP, INC.; JOSEPH D. DAVIS AND TERRI L. DAVIS AS TRUSTEES FOR MENDOCINO GROUP, INC. PENSION PLAN<br><br>Plaintiffs,<br><br>v.<br><br>PETER L. HUNTTING & CO., INC.; SMI PENSIONS; SHEFFLER CONSULTING ACTUARIES INC.; ESTATE OF PETER L. HUNTTING; MIKE EDWARDS; WILLIAM SHEFFLER; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. **'16CV0178 H    BGS**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. BREACH OF FIDUCIARY DUTIES ERISA § 404(A)(1), 29 U.S.C. 1104(A)(1)**<br><br>**2. BREACH OF CONTRACT**<br><br>**3. PROFESSIONAL NEGLIGENCE**<br><br>**4. FRAUD**<br><br>**5. NEGLIGENT MISREPRESENTATION** |

Plaintiffs MENDOCINO GROUP, INC. and JOSEPH D. DAVIS and TERRI L. DAVIS AS TRUSTEES FOR MENDOCINO GROUP, INC. PENSION PLAN (singularly "Plaintiff" and collectively "Plaintiffs") bring this action against PETER L. HUNTTING & CO., INC.; SMI PENSIONS; SHEFFLER CONSULTING ACTUARIES INC.; ESTATE OF PETER L. HUNTTING; MIKE EDWARDS; WILLIAM SHEFFLER; and DOES 1 through 100 (singularly "Defendant" and collectively "Defendants"), and allege as follows:

1

# THE PARTIES

1. Plaintiff MENDOCINO GROUP, INC. is a California Corporation which hired Defendant PETER L. HUNTTING & CO, INC. to create the defined benefit plan MENDOCINO GROUP, INC. PENSION PLAN (the "PLAN"), and is the PLAN sponsor.

2. Plaintiffs JOSEPH D. DAVIS and TERRI L. DAVIS AS TRUSTEES FOR THE MENDOCINO GROUP, INC. DEFINED BENEFIT PLAN are trustees for the PLAN.

3. Defendant PETER L. HUNTTING & CO., INC. ("HUNTTING") created and administered the PLAN until after the death of its principal PETER L. HUNTTING.

4. Defendant SMI PENSIONS ("SMI") is the successor to HUNTTING for both assets and liabilities of HUNTTING.

5. Defendant SHEFFLER CONSULTING ACTUARIES INC. ("SCA") was at all pertinent times the actuary for the PLAN.

6. Defendant ESTATE OF PETER L. HUNTTING (the "ESTATE") is the estate of PETER L. HUNTTING, the deceased principal of HUNTTING. Plaintiffs proceed against ESTATE pursuant to California Probate Code §§ 550 and 554, subject to later amendment upon identification of the personal representative of the ESTATE.

7. Defendant MIKE EDWARDS ("EDWARDS") was a HUNTTING employee/principal, then an SMI employee/principal, who participated in the administration of the PLAN.

8. Defendant WILLIAM J. SHEFFLER is the principal of SCA, and SMI, successor to HUNTTING.

9. Defendants DOES 1 through 100, inclusive, are the fictitious names of those Defendants whose true names are unknown to Plaintiffs, and whose true capacities, whether as individuals, corporations, partnerships, joint venturers and/or associations, are also unknown to Plaintiffs, and when such true names are ascertained, the complaint will be amended to include those names. Plaintiffs are informed and believe and thereon allege that, whenever and wherever in this complaint, any Defendants are the subject of

any charging allegations by Plaintiffs, said Does are also responsible in some manner for the events and happenings, and it shall be deemed that said Defendants, DOES 1 through 100, inclusive, and each of them, are likewise the subject of said charging allegations herein by Plaintiffs.

10. At all times herein mentioned, Defendants, and each of them, were the agents, servants, and employees of each of the other Defendants herein, and at the same time and place of the events hereinafter described, were acting within the course and scope of said agency and employment with the permission and consent of the other Defendants and each of them. Defendants are, and each of them is, successors in interest to the other Defendants. Defendants are, and each of them is, the alter ego of the other Defendants, and Defendants are essentially the extension of each other. As a result, all causes of action asserted hereunder are asserted as to each and every Defendant.

## JURISDICTION

11. Jurisdiction of this Court arises pursuant to ERISA § 502(e)(1) and 29 U.S.C. § 1132(e)(1).

12. Venue is proper under ERISA § 502(e)(2) and 29 U.S.C. § 1132(e)(2) because the PLAN is administered, the breaches took place, and defendants reside or may be found, in this district.

## GENERAL ALLEGATIONS

13. Plaintiffs retained HUNTTING to create and administer the PLAN in March 1999.

14. Plaintiffs are not experts in defined benefit plans. PETER L. HUNTTING represented to Plaintiffs that he and HUNTTING and his team (SCA, SHEFFLER, EDWARDS) were experts in defined benefit plans when initially selling his services, and throughout his relationship with Plaintiffs.

15. On or about March 25, 1999, HUNTTING obtained a FEIN, created the PLAN documents, prepared and filed taxes and all other required government filings on behalf of the PLAN, and prepared an annual PLAN review. HUNTTING also instructed Plaintiffs regarding the amount of the initial contribution to fund the PLAN, and the

3

COMPLAINT FOR DAMAGES

1  required offsetting employee compensation to be paid.

2  16. HUNTTING created the PLAN so that it had an initial effective date of April 1,
3  1998.

4  17. From the PLAN's inception, HUNTTING retained SCA and SHEFFLER to
5  provide actuarial services for the PLAN and assist HUNTTING with the PLAN's
6  administration.

7  18. Consistent with the contractual obligations owed to Plaintiffs and the PLAN, each
8  year PETER L. HUNTTING for HUNTTING and SHEFFLER for SCA would perform a
9  review of the PLAN's investment portfolio and performance, perform actuarial
10 calculations, and determine the appropriate amount of the annual contribution by
11 employer and PLAN sponsor, MENDOCINO GROUP, INC., to the PLAN. HUNTTING
12 and PETER L. HUNTTING would then instruct Plaintiffs to make whatever annual
13 employer contribution HUNTTING, PETER L. HUNTTING, SCA and SHEFFLER
14 determined was appropriate for that year.

15 19. In 2002, PETER L. HUNTTING of HUNTTING advised Plaintiffs that a three-
16 year average for employee compensation needed for the ultimate payment of PLAN
17 benefits had been met, and that no further employee compensation would be required for
18 the life of the PLAN.

19 20. HUNTTING restated the PLAN so that it was frozen effective April 1, 2003,
20 meaning that no new benefits could accrue. However, HUNTTING did not inform the
21 Plaintiffs that he was freezing the PLAN, or the consequence of doing so.

22 21. HUNTTING continued to instruct Plaintiff each year regarding the amount of the
23 annual employer contribution to be made to the PLAN. Plaintiffs relied on
24 HUNTTING's purported expertise, and made the annual employer contributions
25 HUNTTING instructed to be made.

26 22. In November 2014, PETER L. HUNTTING called Plaintiff TERRI L. DAVIS and
27 said that it was important that they meet in person and discuss an issue that had arisen
28 with the PLAN.

4

COMPLAINT FOR DAMAGES

23. On December 5, 2014, PETER L. HUNTTING, JOSEPH DAVIS and TERRI DAVIS met. PETER L. HUNTTING advised that he and SHEFFLER of SCA had evaluated the PLAN assets and the PLAN was "overfunded", meaning that the PLAN assets exceeded the PLAN liabilities, and that the issue needed to be fixed to avoid tax penalties. PETER L. HUNTTING did not inform Plaintiffs of the amount of the overfunding, or that it had been overfunded for many years. Plaintiffs were unaware of the overfunding until revealed by PETER L. HUNTTING. At the meeting, PETER L. HUNTTING advised that a 401K should be set up to cure the overfunding of the PLAN.

24. In the week following the December 5, 2014 meeting, Plaintiffs learned that PETER L. HUNTTING had passed away.

25. On January 15, 2015, EDWARDS advised Plaintiffs that the PLAN was $273,000 overfunded. EDWARDS also advised that the 401K had been set up to correct the overfund of the PLAN, and what amount needed to be transferred from the PLAN to fund the 401K. Plaintiffs were charged by HUNTTING for setting up the 401K.

26. On February 17, 2015, SHEFFLER emailed Plaintiffs that SMI had taken over HUNTTING, and that SMI would be administering the PLAN.

27. On March 16, 2015, SHEFFLER advised Plaintiffs by email that the PLAN was overfunded by $501,000. He also advised that the 401K was an effective way to offset the overfunding.

28. On March 23, 2015, SHEFFLER met with Plaintiff Terri L. Davis and reiterated that the PLAN was overfunded by $501,000. Contradicting his advice in March, SHEFFLER now told Plaintiff Terri L. Davis that the proposed 401K fix was a terrible idea that would result in large I.R.S. excise taxes and penalties if the transfer of funds from the PLAN executed by Plaintiffs at EDWARDS' and SHEFFLER'S instructions could not be retracted. SHEFFLER said the fix for the overfund would require Plaintiffs to expend many hundreds of thousands of dollars in additional, unanticipated compensation payments to offset the overfunding, and require the PLAN to remain active several years after the planned retirement of the PLAN beneficiary and termination of the

COMPLAINT FOR DAMAGES

PLAN.

29. Plaintiffs retained counsel and their own expert.

30. Plaintiff's expert has determined that the PLAN is overfunded by over 1.3 million dollars.

## FIRST CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTIES

## ERISA 404(a)(1), 29 U.S.C. § 1104(a)

(Against All Defendants)

31. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs 1 through 30 above, as though fully set forth herein.

32. Plaintiffs are entitled to bring this action as PLAN fiduciaries pursuant to 29 U.S.C. 1132(a)(2).

33. Defendants are each fiduciaries under ERISA § 3(21)(A) and 29 U.S.C. § 1002(21)(A) because each participated in the administration and management of the PLAN, the creation of the annual PLAN review, and evaluated the investments of the PLAN and made determinations regarding the appropriate amount of annual employer contributions to the PLAN.

34. ERISA imposes strict fiduciary duties upon Defendants as plan fiduciaries. ERISA § 404(a)(1)(B) and 29 U.S.C. § 1104(a)(1)(B) states, in relevant part, that a plan fiduciary must discharge his/its duties with "care, skill, prudence and diligence…"

35. ERISA § 409(a) and 29 U.S.C. § 1109(a) state, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to made good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate…

36. Defendants breached their fiduciary duties to Plaintiffs and the PLAN by continuing to instruct Plaintiffs to make six-figure annual contributions to the PLAN for

several years despite the PLAN being overfunded.

37. Defendants breached their fiduciary duties to Plaintiffs and the PLAN by failing to adequately assess the PLAN's investments, freezing the PLAN in 2003 and not taking into account the impact of the freeze on future contributions, performing incorrect actuarial calculations, not taking into account pertinent tax codes and statutory sections when advising Plaintiffs about the PLAN, all resulting in improper advice to Plaintiffs and overfunding of the PLAN.

38. Defendants breached their fiduciary duties to Plaintiffs and the PLAN by attempting to cover up the amount of the PLAN overfund, and then instructing Plaintiffs erroneously that the establishment and funding of a 401K would correct the overfund.

39. As a result of the breaches, and others which will be established according to proof, Plaintiffs have and will continue to incur damages, including payment of approximately $500,000 in additional employer compensation to offset the overfund caused by Defendants; new PLAN administrator's fees; IRS excise taxes, penalties and fees; attorneys' and accountants' fees and costs; defined benefit plan expert fees and costs; and related damages.

40. Additionally, Plaintiffs are entitled to recover fees paid to Defendants, including annual fees for management, administration and actuarial fees for the PLAN, and the fee paid by Plaintiffs for creation of the 401K Plan which was erroneously recommended.

41. Plaintiffs seek and are entitled to recover a judgment for damages, according to proof, attorneys' and experts' fees and costs, costs of suit, and such other and further relief, as the court deems proper.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT
(Against All Defendants)

42. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs 1 through 41 above, as though fully set forth herein.

43. Plaintiffs contracted with Defendant HUNTTING on or about March 25, 1998 to

7

create, manage and administer the PLAN in compliance with the PLAN documents. Among HUNTTING's duties owed Plaintiffs and the PLAN pursuant to the agreement were to annually review the PLAN investments, in conjunction with the PLAN documents and applicable tax statutes, and perform actuarial calculations to determine and instruct Plaintiffs regarding the appropriate annual employer contribution to the PLAN.

44. Defendant HUNTTING breached its duties to Plaintiffs and the PLAN by continuing to instruct Plaintiffs to make six-figure annual employer contributions to the PLAN for years after the PLAN became overfunded.

45. Defendant HUNTTING breached its duties to Plaintiffs and the PLAN by freezing the PLAN (thereby capping the amount of the maximum benefit payable by the PLAN), and then not taking into account the impact of the frozen PLAN or Internal Revenue Code ("IRC") Section 415 when calculating the amount of annual contributions to be made by Plaintiffs to the PLAN.

46. Defendant HUNTTING breached its duties to Plaintiffs and the PLAN by making numerous actuarial calculation errors and not taking into account pertinent statutory code sections, such as IRC Section 401(a)(17), in calculating and instructing Plaintiffs regarding the amount of the annual employer contribution to the PLAN.

47. Each of the Defendants is the alter ego or successor in interest to HUNTTING and the other Defendants. Therefore, the aforementioned breaches of HUNTTING are breaches of all of the Defendants.

48. As a result of the aforementioned breaches by Defendants, Plaintiffs have and will continue to incur damages, including payment of approximately $500,000 in additional employer compensation to offset the overfund caused by Defendants; new PLAN administrator's fees; IRS excise taxes, penalties and fees; attorneys' and accountants' fees and costs; defined benefit plan expert fees and costs; and related damages.

49. Additionally, resulting from Defendants' breaches, Plaintiffs suffered as damages and are entitled to recover fees paid to Defendants, including annual fees for

8

COMPLAINT FOR DAMAGES

management, administration and actuarial fees for the PLAN, and the fee paid by Plaintiffs for creation of the 401K Plan which was erroneously recommended.

50. Plaintiffs seek and are entitled to recover a judgment for damages according to proof, attorneys' and experts' fees and costs, costs of suit, and such other and further relief, as the court deems proper.

## THIRD CAUSE OF ACTION
## PROFESSIONAL NEGLIGENCE
(Against All Defendants)

51. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs 1 through 50 above, as though fully set forth herein.

52. Defendants are all professionals in the business of managing, administering, creating and/or performing actuarial services for defined benefit plans, and performed those functions for the Plaintiffs and the PLAN.

53. Defendants owed duties of care to Plaintiffs and the PLAN to act pursuant to the standard of care for reasonably careful professionals in the defined benefit plan industry. Specifically, Defendants duties to Plaintiffs included, but were not limited to, proper assessment of the PLAN, its investments, and statutory requirements, and performance of proper actuarial calculations, so as to advise Plaintiffs regarding the appropriate annual employer contribution to the PLAN.

54. Defendants breached their duties to Plaintiffs and the PLAN, and fell below the standard of care for reasonably careful professionals, by continuing to instruct Plaintiffs to make six-figure annual employer contributions to the PLAN for years after the PLAN became overfunded.

55. Defendants breached their duties to Plaintiffs and the PLAN, and fell below the standard of care for reasonably careful professionals, by freezing the PLAN (thereby capping the amount of the maximum benefit payable by the PLAN), and then not taking into the account the impact of the frozen PLAN or Internal Revenue Code ("IRC") Section 415 when calculating the amount of annual contributions to be made by Plaintiffs

to the PLAN.

56. Defendants breached their duties to Plaintiffs and the PLAN, and fell below the standard of care for reasonably careful professionals, by making numerous actuarial calculation errors and not taking into account pertinent statutory code sections such as IRC Section 401(a)(17) in calculating and instructing Plaintiffs regarding the amount of the annual employer contribution to the PLAN.

57. Each of the Defendants is the alter ego or successor in interest to the other Defendants. Therefore, the aforementioned breaches of each Defendant are breaches of all of the Defendants.

58. As caused by the aforementioned breaches by Defendants, Plaintiffs have and will continue to incur damages, including payment of approximately $500,000 in additional employer compensation to offset the overfund caused by Defendants; new PLAN administrator's fees; IRS excise taxes, penalties and fees; attorneys' and accountants' fees and costs; defined benefit plan expert fees and costs; and related damages.

59. Additionally, resulting from Defendants breaches, Plaintiffs suffered as damages and are entitled to recover fees paid to Defendants, including annual fees for management, administration and actuarial fees for the PLAN, and the fee paid by Plaintiffs for creation of the 401K Plan which was erroneously recommended.

60. Plaintiffs seek and are entitled to recover a judgment for damages according to proof, attorneys' and experts' fees and costs, costs of suit, and such other and further relief, as the court deems proper.

## FOURTH CAUSE OF ACTION

### FRAUD

(Against all Defendants)

61. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs 1 through 60 above, as though fully set forth herein.

62. Defendant HUNTTING, through its principal PETER L. HUNTTING, omitted to tell Plaintiffs both the amount of the PLAN overfund Defendants had caused, as well as

the consequences to Plaintiffs and the PLAN, during his meeting with Plaintiffs on December 5, 2014, even though, and because, he knew that those facts would be material to Plaintiff. At the same meeting, PETER L. HUNTTING advised Plaintiffs that the overfund problem could be fixed with the creation of, and shifting of funds to, a new 401K HUNTTING would set up for Plaintiffs, when, in fact, he knew that the representation was false, and intended that the Plaintiffs would rely upon it. PETER L. HUNTTING made the misrepresentations with the intent to deceive Plaintiffs and induce Plaintiffs' reliance, resulting in extra fees to HUNTTING, and furthering HUNTTING/PETER L. HUNTTING's attempts to avoid litigation, liability, and damage to the reputation of each.

63. Defendant EDWARDS continued the ruse by advising Plaintiffs that the PLAN was overfunded only $273,000 and insisting that the 401K HUNTTING charged Plaintiffs to create would fix the problem, even though he knew that the overfund was many multiples larger, and that the 401K would not fix the problem, but with the intent to deceive Plaintiffs, and have Plaintiffs rely upon his misrepresentations. EDWARDS made the misrepresentations to Plaintiffs to try to avoid litigation, liability, damage to reputation, and justify the fees charged for the 401K.

64. SHEFFLER on behalf of himself, SCA, and SMI misrepresented and minimized the size of the PLAN overfund and the consequences to Plaintiffs in an email to Plaintiffs on March 16, 2015, and reiterated the recommendation of the 401K "fix". During his March 23, 2015 meeting with Plaintiff TERRI L. DAVIS, SHEFFLER, again on behalf of himself, SCA and SMI, misrepresented and minimized the size and consequences of the PLAN overfund. The aforementioned communications were made by SHEFFLER with the intent deceive Plaintiffs and have them rely on his statements, in order to try to avoid litigation, liability, and damage to his reputation and the reputation of his companies.

65. Defendants conspired with one another to conceal the amount of the overfunding from Plaintiffs, in order to attempt to generate fees, avoid liability, and avoid damage to

their respective reputations. Defendants' misrepresentations were made solely for reasons of self-interest, and in complete, callous, malicious, and utter disregard of the consequences to Plaintiffs and the PLAN.

66. Plaintiffs relied upon the misrepresentations first of HUNTTING, PETER L. HUNTTING and EDWARDS by keeping HUNTTING on as administrator, initially, and authorizing and paying HUNTTING for the creation of the 401K, and then of SHEFFLER, on behalf of himself, SCA and SMI, by following his initial erroneous instructions about following through with the funding of the 401K.

67. As a result of Defendants' intentional misrepresentations, Plaintiffs have and will suffer damages including payment for creation of the erroneous 401K; new PLAN administrator's fees; pain and suffering (as to individual Plaintiffs); attorneys', accountants' and defined benefit plan experts' fees and costs; and other consequential damages related to the PLAN overfund remedy and administration.

68. Plaintiff seeks and is entitled to recover a judgment for damages, including but not limited to punitive damages, according to proof, costs of suit, and such other and further relief as the court deems proper.

## FIFTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

(Against all Defendants)

69. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs 1 through 68 above, as though fully set forth herein.

70. HUNTTING and PETER L. HUNTTING instructed Plaintiffs that six-figure annual employer contributions to the PLAN were appropriate for several years after the PLAN could accept no more funding because its assets exceeded its obligations.

71. Defendants HUNTTING and PETER L. HUNTTING should have known that the PLAN could not take any more contributions, and was, in fact, overfunded.

72. Defendants HUNTTING and PETER L. HUNTTING intended that Plaintiffs rely upon the above representations.

COMPLAINT FOR DAMAGES

73. After Defendants determined that the PLAN was overfunded, as previously cited herein, each of the Defendants, or representatives on their behalf, made inaccurate representations to Plaintiffs, which Defendants should have known were inaccurate, regarding the amount of the PLAN overfund and/or the appropriate fix, with the intent that Plaintiffs rely upon such statements.

74. Plaintiffs relied upon the representations of Defendants HUNTTING and PETER L. HUNTTING about annual employer contributions because Plaintiffs are laypersons with regard to defined benefit plans and Defendants were professed experts hired to administer and manage the PLAN. Plaintiffs relied upon the representations of Defendants HUNNTING, PETER L. HUNTTING, EDWARDS, SHEFFLER, SCA and SMI regarding the amount of the PLAN overfund and the appropriate fix (including the erroneous 401K) because Plaintiffs are laypersons with regard to defined benefit plans and Defendants were professed experts hired to administer and manage the PLAN.

75. As a result of Defendants' negligent misrepresentations, Plaintiffs have and will suffer damages including, but not limited to, additional compensation of approximately $500,000 to offset the PLAN overfund; amounts paid for creation of the erroneous 401K and yearly PLAN administration and management fees paid Defendants; new PLAN administrators' fees; I.R.S. excise taxes, penalties and fees; pain and suffering (as to individual Plaintiffs); attorneys', accountants' and defined benefit plan experts' fees and costs; and other consequential damages related to the PLAN overfund remedy.

76. Plaintiffs seek and are entitled to recover a judgment for damages, according to proof, costs of suit, and such other and further relief as the court deems proper.

WHEREFORE, Plaintiffs pray for judgment in its favor and against Defendants for the following:

    1. Damages according to proof at trial;

    2. Pain and suffering;

    3. Punitive damages;

4. Attorneys' and Experts fees and costs per ERISA §§ 409(a), 502(g) and 29 U.S.C. §§ 1109(a), 1132(g);

5. Costs of suit;

6. Such other and further relief as the court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

DATED: January 25, 2016                    HORTON VILLAGE LAW GROUP, APC


By: s/ Lincoln V. Horton
LINCOLN V. HORTON
Attorneys for Plaintiffs MENDOCINO GROUP, INC.; JOSEPH D. DAVIS AND TERRI L. DAVIS AS TRUSTEES FOR MENDOCINO GROUP, INC. PENSION PLAN